STATE v. FREDERICK W. PRATT.[1]

June 19, 1903.

Nos. 13,515—(29).

**Permit to Move Building.**

When the council of the city of Minneapolis grants a permit to move a building through the streets, there is no implied authority given to the person to whom such permit is issued to cut or remove branches from trees located between the sidewalk and the curb of the street, although such cutting or removal may be necessary in order to use the permit.

[1] Reported in 95 N. W. 589.

**Authority to Trim Trees.**

> Authority to perform acts of this kind must first be obtained from the board of park commissioners, and in strict compliance with the ordinance of that board prohibiting such acts except when expressly authorized.

Appeal by defendant from a judgment of the municipal court of Minneapolis, Dickinson, J., whereby he was convicted of violating an ordinance of the board of park commissioners of that city prohibiting the cutting and defacing of ornamental shade trees in the city streets without permission of the board. Affirmed.

*Lancaster & McGee,* for appellant.

The removal of a house from one part of a city to another is not an uncommon occurrence; it can be accomplished only by the use of the public highways; and when authority to use them for that purpose is conferred by the body exercising the primary control over them, it cannot be that it is accompanied with such limitations as would render it practically nugatory. A person possessed of authority to use the public streets for such a purpose is possessed of authority to remove whatever obstructs their use for that purpose, and the permit from the city council under which appellant was proceeding, authorized by implication the act complained of.

Municipal corporations have only those powers specifically committed to them by their charters, and the language in which these powers are given must be strictly construed. 1 Dillon, Mun. Corp. (3d Ed.) § 89.

Sp. Laws 1887, p. 453 (c. 17) gives to the board the "authority to direct and regulate the planting and preservation of shade and ornamental trees and shrubbery in the streets, alleys and public grounds of said city" only. The ordinance in question transcends the power given to the body which passed it. The authority of that body to regulate the preservation of the tree, is not authority to forbid acts that are in no way detrimental to it. The ordinance should receive a reasonable construction, and should not be so construed as to bring within its inhibition, acts merely innocent or neutral or indifferent in their character, even though, viewed literally, it would bear such a construction. City of St. Paul v. Gilfillan, 36 Minn. 298; State v. Rohart, 83 Minn. 257; Department of Health v. Ebling, 78 N. Y. Supp. 13.

*Frank Healy,* City Attorney, and *C. J. Rockwood,* for the State.

COLLINS, J.

This is an appeal from a judgment of the municipal court of the city of Minneapolis pronouncing defendant guilty of violating an ordinance of the board of park commissioners of that city. The facts upon which the conviction rests are undisputed, and, briefly stated, are as follows: Defendant was a house mover, and obtained from the city council, as he was obliged to do, a permit authorizing him to move a house through the streets some twelve blocks. While moving it in the usual and customary manner he cut and removed a branch from a live ornamental shade tree, which stood in the street between the sidewalk and the curb, which branch was twenty feet long, and between five and six inches in diameter at the trunk of the tree where cut. It was reasonably necessary to remove the branch, or a part thereof, in order to get the house past the tree. He made no application to the board of park commissioners for permission or authority to cut or remove the branch, and had none. The principal question in the case is whether he was obliged to obtain such permission, and, not having done so, did he violate the ordinance?

By the city charter (Sp. Laws 1881, p. 459, c. 76, subc. 8, § 1) the city council was given the care, supervision, and control of all streets and highways within the city, and by subdivision 29, § 5, subc. 4, c. 76 (p. 437), it was granted full power and authority to direct and regulate by ordinance the planting and preservation of all ornamental trees on such streets and highways. By an amendatory act subdivision 29 was repealed, and the power thereby conferred upon the city council transferred to the board of park commissioners of the city. Sp. Laws 1887, p. 453 (c. 17). By Sp. Laws 1889, p. 573 (c. 30, § 16), the 1887 act was amended so that the park board was given power and authority to direct and regulate the planting and preservation of all shade and ornamental trees in the streets, alleys, and public grounds of the city, and was also authorized to enact such ordinances as it might deem proper to carry out the purposes of this provision, including ordinances providing for the enforcement of that part of section 16 which expressly provided that no shade or ornamental trees growing on the streets, alleys, or public grounds should be destroyed or removed except by leave in writing first obtained from the board. In pursuance of this legislative authority the ordinance men-

tioned in the complaint was enacted. It provided that no person, except a representative or agent of the park board, should remove, destroy, cut, deface, or in any way injure any shade or ornamental tree in any street except as expressly authorized to do so by the board; and it was further provided that no person—licensed or unlicensed—engaged in the removal of buildings should move any building along any street in such a way as to interfere with or injure any tree in such street, without special permit from the board. Penalties were provided and specified in cases of conviction under the ordinance.

1. It is contended by counsel for the defendant that, as the city council has the paramount care and control over and of the streets of the city, its permit to move a building covered and included, by implication, the right and power to remove whatever hindered or obstructed such moving, and that an ordinance, in so far as it assumes to punish an act of the character of that committed by defendant, is void and unauthorized. In other words, the contention is that when the defendant obtained a permit from the city council to remove the building—authority to grant the permit being conceded—he was authorized to cut any branch that should prove an obstacle, and that this necessarily results from the fact that general control over the streets and highways still rests in the city council, and has not been withdrawn by the legislation which conferred upon the park board power to direct and regulate the planting and preservation of shade and ornamental trees.

The permit in this case, and the only permit which could properly be issued by the city council, simply authorized the moving of the building from one point in the city to another, along the public streets, no route being specified. The council had no authority, expressed or implied, to issue a permit which would allow the defendant to violate a duly authorized ordinance of the park board. The council still retains authority over the streets for certain purposes, and is empowered to do what is necessary to put the streets in condition for ordinary street use and travel, and to keep them in order afterward. This particular branch of a tree did not interfere with the ordinary use of the street, and until it became an obstruction thereto the city council was without power to remove it, or directly or indirectly to authorize it to be removed. Had it interfered with the ordinary and

customary use of the street by the public, it is quite probable that the council would have authority to cause it to be removed, precisely as if it were a surface obstruction which impeded travel. Its powers and jurisdiction over the streets were wholly different and distinct from those vested in the park board. That the shade and ornamental trees of the city might be taken care of, protected, and preserved, this board was created with authority to enact ordinances which would promote the object in view, which was to add to the comfort of the public and to beautify the streets by a well-considered, systematic plan of operations adopted and carried on by men supposed to be especially fitted for the work.

There is no inconsistency or conflict between the duty and power of the city council in respect to the general care and control of the streets and the duty and authority conferred upon the park board in respect to shade and ornamental trees. Each body has its sphere of labor, which can be easily and harmoniously performed. The permit issued by the council to defendant to move the building was granted subject to the restrictions and conditions which had been imposed on all citizens by the duly-authorized ordinances of the park board, designed to protect and preserve the trees. Authority to disregard the ordinance could not be implied from the fact that authority to issue the permit rested exclusively with the council.

2. It is further contended that the ordinance in question must receive a reasonable interpretation in order to be valid, and that so interpreted it did not prohibit acts in respect to trees which were not actually injurious to the same, and therefore that, before defendant could be convicted, it was necessary to show by competent testimony that the cutting of the branch did actual damage. Such a construction would completely destroy the force of any ordinance which might be enacted. To determine whether a tree should be trimmed by the removal of branches is wholly a question of skill to be determined by experts in that line of business. At what time of year, to what extent, and by what method the branches of shade and ornamental trees should be removed is a matter which the legislature undoubtedly intended to place in the hands of a board composed of persons well qualified to decide. The legitimate and laudable purposes of the act could only be effected by placing the authority to determine these questions in the

hands of presumably competent persons, whose decision would not only be unbiased, but of an expert nature. In no way could the object sought for be reached, and such a system secured, save by committing the whole subject to certain public officials, and authorizing them to determine in advance what should or should not be done. In no other manner could shade and ornamental trees along the streets be protected and preserved, and in these days, when thousands of dollars are annually spent upon trees in streets and other public places—an expenditure which does not interfere with their ordinary and customary use—no court should hesitate to construe and uphold such legislation in the spirit in which it is enacted, and to effectuate its purpose. If this be not done, and an act of vandalism is committed—if trees are injured, defaced, or destroyed by any one who fancies that he has a right or that it is necessary for him so to do—the public has no remedy whatsoever. A fine or imprisonment, a payment of the fine into the treasury, or the incarceration of the offender in jail, will not restore the trees, and thus the main purpose of such legislation is rendered fruitless. The object of the law and the necessities of the case require that the prohibition be unconditional and absolute, and that no chances be taken and no opportunity be given to any one to deface or injure a tree. The various sections of the ordinance must be enforced with a strict hand, because, if the prohibited act be perpetrated, the mischief is accomplished and is irreparable.

The views herein expressed do not conflict with those found in State v. Rohart, 83 Minn. 257, 86 N. W. 93, 333, in which it was held that an ordinance of this same board forbidding the use of parks and parkways for certain loaded vehicles with tires less than six inches in width was declared unreasonable, because, in effect, prohibitive. of that class of traffic. By the ordinance now before us the use of the streets is not limited or prohibited either for ordinary purposes or for extraordinary use, such as house-moving. Its use is simply regulated by an ordinance requirement to the effect that, if the removal of trees or parts thereof is necessary, the consent of the board must first be secured.

3. We hold that when the city council grants a permit to move a building through the streets there is no implied authority given to the person to whom such permit is issued to cut or remove branches from

trees located between the sidewalk and the curb, although such cutting or removal may be necessary in order to use the permit, and that authority to perform acts of this kind must first be obtained from the board of park commissioners and in strict compliance with the ordinance. We think that the provision of the ordinance which refers to the moving of buildings emphasizes and corroborates these conclusions. Possibly the park board had reasons for especially referring to and including all persons engaged in the moving of buildings, whether licensed or not licensed so to do.

4. It has been urged that under this ordinance the owner of property bordering upon a street is absolutely prohibited from trimming trees which may be set out by him in front of his premises. Whether the ordinance, with such a construction, would be reasonable and enforceable, we are not called upon to decide at this time. We simply hold that as to the defendant and the cutting in question the ordinance was applicable and reasonable, and that without special authority from the park board he had no right to remove the branch in question.

Judgment affirmed.